UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Maria Magdalena Garcia,

                Plaintiff,            **Civil Action No. 11-13807**

           **vs.**                      **District Judge George Caram Steeh**

**Commissioner of Social**         **Magistrate Judge Mona K. Majzoub**
**Security,**

                **Defendant.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Maria Magdalena Garcia has filed this civil action seeking judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security disability benefits. (Dkt. 1.) See 42 U.S.C. § 405(g). Before the Court are the parties' motions for summary judgment. (Dkt. 11, 13.)

The Court has been referred these motions for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Dkt. 2.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation.[1]

I.      **Recommendation**

Because the Court recommends finding that substantial evidence supports the ALJ's decision to deny Plaintiff her benefits request–for the record did not contain objective medical evidence to support Plaintiff's allegations–and finding that remand is not appropriate, the Court recommends

_____

[1]The Court dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

denying Plaintiff's motion for summary judgment, granting Defendant's motion for summary judgment, and dismissing this case.

**II.     Report**

        **A.     Facts**

                **1.     Procedural facts**

On December 7, 2005 Plaintiff filed for disability benefits, alleging that she became disabled on October 20, 2005.  (AR at 12.)  Her claim was initially denied and she sought review by an ALJ. (*Id.*) On March 10, 2011 the ALJ held a hearing on Plaintiff's benefit request. (*Id*. at 19.) On March 24, 2011 the ALJ denied Plaintiff's request.  (*Id*. at 4.)  Plaintiff sought review from the Appeals Council.  On July 12, 2011 the Appeals Council denied review.  (*Id*. at 1.)  On August 31, 2011 Plaintiff filed this case seeking judicial review of Defendant's final decision.  (Dkt. 1.)

                **2.     The ALJ's written decision**[2]

On March 24, 2011 the ALJ issued her written decision denying Plaintiff her benefits request.  (AR at 12.)  The ALJ found that Plaintiff had the following severe impairments: obesity; diabetes; chronic advanced seropositive rheumatoid arthritis–acute exacerbation; Berger's disease; chronic renal insufficiency; pulmonary sarcoidosis; and asthma.  (*Id*. at 14.) But the ALJ stated that the medical evidence did not establish that any of these alleged impairments had more than a minimal effect on Plaintiff's ability to perform basic work activities.  (*Id.*)

The ALJ commented that Plaintiff was noncompliant with her CPAP machine and therefore the evidence suggested that Plaintiff's sleep apnea was not as severe as she alleged.  (AR at 15.)  The

---

[2]The ALJ noted that this application for benefits was Plaintiff's six time applying for benefits.

ALJ then noted that obesity was no longer a listed impairment, but that she still considered Plaintiff's obesity in relation to the musculoskeletal, respiratory, and cardiovascular system listings. (*Id.*)

> The ALJ stated the RFC:
>
> Plaintiff [has] the residual functional capacity to perform light work as defined . . . except: she is limited to occasional climbing of ropes, ladders, or scaffolds, occasional handling (gross manipulation) and occasional fingering (fine manipulation); she must avoid concentrated exposure to extreme cold and heat, weather, wetness, humidity, irritants such as fumes, odors, dusts, and gases, and avoid unprotected heights.[3]

(AR at 15.)

To support this RFC calculation, the ALJ reviewed the record.  (AR at 16.)  The ALJ first reviewed Plaintiff's disability report and the discrepancies within the report.  (*Id.*)  The ALJ then reviewed the medical evidence.  (*Id.*)  In reviewing the evidence, the ALJ noted that the significant amount of objective testing showed "primarily normal results, which d[id] not provide significant support for [Plaintiff's] subjective allegations of disabling impairments."  (*Id.*)  The ALJ pointed out:

- A normal November 2004 knee x-ray;
- An October 2005 MRI of Plaintiff's lumbar spine that showed small to moderate findings consistent with disc herniations;
- A cervical spine MRI that revealed a minor bulge but no herniation;
- Two normal bone density mass tests;

---

[3]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.  Even though the weight lifted may be very little, a job is in the category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 404.1567(b).

- A normal EMG for Plaintiff's upper extremities, that showed mild carpal tunnel syndrome with mild neuropathy;
- Bilateral shoulder x-rays from March 2006 that were normal;
- Bilateral foot x-rays conducted near March 2006 that revealed small spurs, but were otherwise normal;
- Bilateral ankle x-rays in May 2006 that were essentially normal, showing only minimal findings and ankle swelling;
- A June 2007 ankle x-ray that showed some swelling, but was otherwise normal;
- A June 2007 chest x-ray that revealed some limitation in inspiration, but was otherwise normal;
- A nuclear medicine aerosol ventilation/pulmonary perfusion study that showed fully normal ventilation and perfusion results;
- An April 2008 chest x-ray that was normal and unchanged from prior testing results in June 2007; and
- Mild degenerative disease that was located in one spot on her lumbar spine but there was no evidence of spondylolysis or spondylolisthesis.

(AR at 16-17.)

The ALJ then more thoroughly reviewed Plaintiff's allegations of rheumatoid arthritis. (AR at 17.) The ALJ stated that the objective medical evidence "reduces the credibility of [Plaintiff's] allegations regarding severity, but supports the [RFC]." (*Id.*) The ALJ noted the records did reveal that Plaintiff had rheumatoid arthritis. (*Id.*) But the ALJ pointed out that Plaintiff, although reporting a ten out of ten pain, only had "mild puffiness in her ankle joints, right knee and hands." (*Id.*) The ALJ then stated that Plaintiff had no other signs typically associated [with] chronic RA concerns. (*Id.*) The ALJ pointed out that Plaintiff's elbows, shoulders, and knee joints were mostly normal, with only very minimal findings. (*Id.*) The ALJ then stated that the initial evaluation revealed no evidence of any chronic RA deformities. (*Id.*) The ALJ stated that Plaintiff's RA doctor, Dr. Diola, provided consistent medical management of Plaintiff's RA. (*Id.*) The ALJ noted that there was no evidence in the record that Plaintiff was dissatisfied with Dr. Diola's medical treatment or that Plaintiff ever sought a second opinion. (*Id.* at 17-18.) The ALJ addressed Plaintiff's assistive devices and stated that the records showed that Dr. Diola prescribed these devices in response to

4

Plaintiff's "subjective complaints of generalized pain and inability to function." (*Id.* at 18.) The ALJ noted that there was "no clinical evidence to suggest any objective imaging test results required [Plaintiff] to use a splint, back or knee braces, or required the use of a wheelchair." (*Id.*)

The ALJ pointed out that Plaintiff reported increasing her activity level and "overdoing" it with household chores. The ALJ found that this reporting was inconsistent with Plaintiff's claimed degree of limitation. (AR at 18.)

The ALJ reviewed emergency room records, which she stated showed that Plaintiff visited the ER several times for additional pain medications. (AR at 18.) The ALJ noted that the ER released Plaintiff into Dr. Diola's care. (*Id.*)

The ALJ discussed Plaintiff's alleged Berger's disease, chronic renal insufficiency, and diabetes. (AR at 18.) The ALJ stated that the objective medical evidence reduced Plaintiff's credibility of Plaintiff's allegations of severity. (*Id.*) the ALJ noted that Plaintiff had a history of IG nephropathy and protein in her urine, as well as non-insulin dependent diabetes. (*Id.*) But the medical evidence, the ALJ stated, showed that Plaintiff was doing well overall. (*Id.*) The ALJ further noted that Plaintiff only visited her primary care physician annually or biannually, "which is a pattern inconsistent with any disabling medical conditions." (*Id.*)

The ALJ addressed Plaintiff's alleged respiratory impairments. (AR at 18.) The ALJ stated that the medical evidence reduced Plaintiff's credibility. (*Id.*) The ALJ pointed out that the record did not support Plaintiff's allegation that she had to use her inhaler "all the time" in order to breathe. (*Id.*) The ALJ pointed out that, despite one episode of decreased oxygen levels, the record showed that Plaintiff had normal respiratory examinations, good bilateral air exchange, clear lungs, normal pulmonary testing, and only sporadic complaints of shortness of breath. (*Id.*)

5

The ALJ stated that she considered Plaintiff's obesity, observed Plaintiff in the hearing room and found that Plaintiff could ambulate "quite well without an assistive device," and found that Plaintiff's weight did not contribute to Plaintiff's disability.  (AR at 19.)

The ALJ reviewed the objective evidence touching upon Plaintiff's ability to ambulate effectively.  (AR at 19.)  The ALJ stated that Plaintiff exhibited the ability to ambulate.  (*Id.*)

The ALJ stated that there was a "complete lack of medical opinion supporting [Plaintiff's] assertions that she was permanently disabled and unable to perform any work-related functions." (AR at 19.)  The ALJ mentioned that Dr. Diola's records did not indicate that Plaintiff could not perform work-related functions.  (*Id.*)

The ALJ reviewed a March 2010 disability examination.  (AR at 19.)  The ALJ stated that the state agency medical examiner opined that Plaintiff had the ability to perform work at the light exertional range and suggested some postural limitations, but did not recommend any manipulative, visual, or communicative limits.  (*Id.*)  The ALJ noted that the state agency examiner only limited Plaintiff's exposure to fumes, odors, gases, and poor ventilation.  (*Id*.)  The ALJ pointed out that the state agency examiner did not examine Plaintiff in person, but that the ALJ gave the opinion significant weight because the opinion was supported by the whole record.  (*Id.* at 20.)

The ALJ reviewed Plaintiff's husband's third party statement.  (AR at 20.)  The ALJ discredited the opinion, finding it in inconsistent with the record as a whole.  (*Id.*)

The ALJ also considered Plaintiff's working history.  (AR at 20.)  The ALJ stated that Plaintiff had a sporadic history of working, which "undercut[] her credibility as it pertain[ed] to being unable to work [] due to a medical disability."  (*Id.*)

The ALJ reviewed Plaintiff's medications and noted that the record evidence did not include

6

reports of disabling or work-preclusive side effects.  (AR at 20-21.)

The ALJ noted that the lack of longitudinal evidence that supported Plaintiff's allegations that she is completely precluded from work weighed against her credibility.  (AR at 21.)

The ALJ then found that Plaintiff's consistent treatment with Dr. Diola is evidence that did not support Plaintiff's subjective complaints.  (AR at 21.)  The ALJ stated that Dr. Diola was successfully managing Plaintiff's RA symptoms.  The ALJ pointed out that, given Plaintiff's alleged disabling symptoms, that she would have sought treatment elsewhere.  Because she did not seek treatment elsewhere, the ALJ stated that that failure weighed against her allegations.  (*Id.*)

After discussing why she found that Plaintiff was not fully credible, the ALJ stated how her RFC was supported by the record, and how the vocational expert testified that there were jobs that Plaintiff could perform in the economy.  The ALJ then directed a finding of "not disabled."  (AR at 22-24.)

### 3.      March 10, 2011 hearing

On March 10, 2011 Plaintiff testified at her hearing.  (AR at 28.)  Plaintiff stated that she could not work because she could not walk far and because she was taking infusions–IV medication she received in the hospital–which required her to be hospitalized once a month.  (*Id.* at 40.) The whole process took forty-five minutes, Plaintiff stated.  (*Id.* at 41.)  But she added that she felt sick as a result of the medication.  (*Id.*)

Plaintiff also testified that she was asthmatic, which also prevented her from working (in addition to her RA symptoms–bone and joint pain and swelling).  (AR at 42-43.)

Plaintiff testified that her husband helped her move, walk, use the restroom, brush her teeth, comb her hair, and bathe her.  (AR at 46.)

7

The ALJ then pointed out that Plaintiff walked into the hearing room without a cane and had been holding a tissue throughout the hearing.  (AR at 46.)  Plaintiff explained that during the day she could be "a little bit okay where [she could] walk" but that at night, she could not walk.  (*Id.*)  And Plaintiff added that she was in extra pain when it rained.  (*Id.*)  And then Plaintiff explained that she could not hold her cane, but she could hold her tissue.  (*Id.*)  She added that the most she could carry was a twenty ounce bottle of water. (*Id.*)

Plaintiff testified that her husband made breakfast, got her medications together, cleared the table and did everything.  (AR at 47.)  She stated that she went to church, and used her husband's arm to get into the church.  (*Id.* at 49.)  She added that she went grocery shopping with her husband. (*Id.*)

Plaintiff testified as to other pain due to her diabetes.  (AR at 55.)

The ALJ posed various hypothetical questions to the vocational expert.  (AR at 60.)  The vocational expert testified that jobs existed in the economy given the hypothetical questions.  (*Id.* at 61.)

### 4.      Record evidence

As Defendant points out in its brief, the ALJ summarized the record evidence accurately. The Court has independently and thoroughly reviewed the record evidence and agrees with Defendant regarding the ALJ's evidence presentation.  The Court therefore only presents that evidence it finds necessary in the analysis section below.

### 5.      Plaintiff's supplemental evidence

Plaintiff has submitted Phoenix Family Physicians, P.C. records. (Dkt. 11-2, at 1.)  Dated March 1, 2011, these records are generally unremarkable.  While a report from February, 2011

8

shows that Plaintiff had elbow pain and the report noted RA, the report did not note any physical limitations or review any diagnostic criteria. (*Id*. at 5-6.) Phoenix records from before that February report do not contain any indication or evidence that Plaintiff's ailments were work-preclusive or debilitating.

Covenant Healthcare Imaging and Diagnostic Records from February, 2011 are also unremarkable. (Dkt. 11-3, at 14.) The records show "normal duplex carotid examination," "normal cervical spine," and normal breast exam. (*Id*. at 14-16.)

A Progressive Medical record from August 27, 2010 shows that Plaintiff reported left knee pain, but the findings suggested that Plaintiff had a "[n]ormal left knee." (Dkt. 11-3, at 17.) The record notes that the knee's adjacent soft tissues were "unremarkable." (*Id.*)

St. Mary's of Michigan records show that Plaintiff had normal echocardiogram results. (Dkt. 11-4, at 1-2.) A July 23, 2010 record shows that Plaintiff was admitted to St. Mary's of Michigan due to shortness of breath. (*Id*. at 3.) That record notes "multiple episodes of recent exacerbations in her rheumatoid arthritis in her sarcoidosis requiring medical therapy changes," but the record does not indicate any limitations. (*Id.*)

Plaintiff has also submitted Valley Rheumatology Associates, PLLC records from March, 22, 2011. (Dkt. 11-4, at 12.) These records show that Plaintiff complained of pain in her hands and knees and swelling in her elbows and hands. (*Id.*) The record shows that Plaintiff was "a pleasant []female in no acute distress. Her hands and wrists are mildly warm, puffy and tender particularly with synovial thickening and tenderness of the MCP, PIP, and wrist joints. There is mild dorsal subluxation of MCP joints." (*Id.*) The subjective portion of a record from the end of 2010 shows Plaintiff stated that she was very sore in the morning. (*Id.* at 14.) The 2010 subjective portion of

9

the record also shows that Plaintiff's "elbows and hands hurt with swelling of her fingers" and that her neck "hurt[] at times." (*Id.*) The objective finding, though, was that Plaintiff was "in no acute distress." (*Id.*) The remaining records from Valley Rheumatology echo that Plaintiff was in no acute distress.

**B.    Standards**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.    Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the Court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d

535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### 1.    Framework for social security disability determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.    Analysis

### 1.    Substantial evidence supports the denial of benefits

11

Plaintiff argues that the ALJ erred in finding that Plaintiff was not credible.  (Pl.'s Mot. at 5.)  To support her position, Plaintiff maintains that the evidence she attached to her motion that was allegedly not presented to the ALJ at the hearing or the Appeals Council.  (*Id.* at 5-6.)  Plaintiff states that these records describe "multiple impairments . . . [that] existed long before the ALJ [h]earing."  (*Id.* at 5.)  Plaintiff adds that these records show "a lengthy and consistent history of regular contact with her physicians."  (*Id.* at 5-6.)  And then Plaintiff states that "[h]er subjective complaints of pain are consistent throughout these records. [The complaints] are not something which [Plaintiff] dreamed up just prior to the ALJ [h]earing."  (*Id.* at 6.)

Defendant argues that substantial evidence supports the ALJ's decision and that remand is not appropriate given Plaintiff's attached supplemental evidence.  Defendant argues that the ALJ "documented in significant detail the fact that objective medical evidence and laboratory findings prior to Plaintiff's date last insured[, March 31, 2007,] showed primarily normal results."  (Def.'s Mot. at 7.)

Defendant then points out that the ALJ's finding that Plaintiff could perform a reduced range of light work "was consistent with the only medical opinion in the record"–a March, 2007 RFC performed by Dr. Robert Nelson at the state agency's request. (Def.'s Mot. at 8.)  Defendant adds that "[n]o other doctor opined that Plaintiff had any work restrictions or limitations on activity, nor that her conditions affected her ability to work."  (*Id.* at 9.)

Defendant also addresses Plaintiff's argument that she should be found disabled based on her testimony.  (Def.'s Mot. at 9.)  Defendant argues that the Court should defer to the ALJ's credibility determination and that the evidence does not support Plaintiff's complaints of disabling pain.  (*Id.* at 9-10.)

12

The Court recommends agreeing with Defendant.  Plaintiff has not presented objective medical evidence that she was disabled and she has not given a compelling reason to set aside the ALJ's credibility determination.  Subjective complaints of "pain or other symptoms shall not alone be conclusive evidence of disability."  *Pasco v. Comm'r*, 137 F. App'x 828, 834 (6th Cir. 2005) (citation omitted).  The Sixth Circuit has addressed how to analyze subjective complaints of pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can be reasonably be expected to produce the alleged disabling pain.

*Id*. (quoting *Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)).  *See also*  20 C.F.R. § 404.1529.[4]

The Court recommends agreeing with Defendant and finding that substantial evidence supports the ALJ's decision.  The ALJ found that the record lacked objective medical evidence to support disability.  The Court agrees.  The Court has thoroughly reviewed the record and, as the ALJ

---

[4]This regulation provides, "statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonable be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.  In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings and statements about how your symptoms affect you." "We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonable be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work[.]"    20 C.F.R. § 404.1529(a).

The regulation adds, "[y]our symptoms, such as pain . . . will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."    20 C.F.R. § 404.1529(b)

points out, it does not contain evidence of disability from any of Plaintiff's alleged impairments. While the Court does note that Plaintiff has received diagnoses of various impairments, the record does not support that Plaintiff could not work due to these impairments.   As Defendant points out, the mere diagnosis of an impairment "says nothing about the severity of the condition." *Germany-Johnson v. Comm'r*, 313 F.App'x 771, 779 (6th Cir. 2008) (citations omitted).

The ALJ also correctly relied upon the state agency examiner's RFC–no other doctor or medical evidence suggested any work restrictions or limitations that affected Plaintiff's ability to work.

Regarding Plaintiff's credibility, Plaintiff has not presented any reason to set aside the ALJ's determination that Plaintiff was not credible regarding her pain.  Given that an ALJ is in the "best position to observe witnesses' demeanor and to make an appropriate evaluation as to their credibility," "an ALJ's credibility assessment will not be disturbed 'absent compelling reason.'" *Reynolds v. Comm'r*, 424 F.App'x 411, 416-17 (6th Cir. 2011) (citations omitted).  The Sixth Circuit has instructed,

> [i]n making a credibility determination, Social Security Ruling 96-7p provides that the ALJ must consider the record as a whole, including objective medical evidence; the claimant's statements about symptoms; any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant; and any other relevant evidence.

*Id*. (citing SSR 96-7p, 1006 WL 374186, at *2 (July 2, 1996)).

Here, the ALJ rejected Plaintiff's testimony at the hearing and her subjective complaints in the record.  He pointed out that Plaintiff did not appear in any distress at the hearing, was able to walk, and could hold on to a tissue, when she alleged that she could not walk or grip anything.  He also pointed out how Plaintiff's subjective complaints in the record were not supported by

substantial evidence, which the Court discussed above.

The Court therefore recommends finding that Plaintiff has not put forth a compelling reason to set aside any credibility finding.

### 2.      The Court recommends finding that remand is not appropriate

Plaintiff requests that the Court remand this matter, given the supplemental evidence that she has attached to her motion for summary judgment.  Defendant opposes this request for remand and argues that Plaintiff's request for remand due to the supplemental evidence is not appropriate.  While 42 U.S.C. § 405(g) does give the Court the ability to remand if new evidence is presented, there are conditions that must exist before the Court makes such a remand.[5]  For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was "not in existence or available to the claimant at the time of the administrative proceeding." . . . Such evidence is "material" only if there is "a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." . . . A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ . . . [T]he burden of showing that a remand is appropriate is on the claimant. *Ferguson v. Comm'r*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)(citations omitted)).

The Court has presented the supplemental evidence above.  Those records show unremarkable results.  Those records show subjective complaints that Plaintiff made about her

---

[5]The Court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.] 42 U.S.C. § 405(g).

rheumatoid arthritis, but not objective medical evidence that supported the complaints–for doctor found Plaintiff to be in "no acute distress." Because the Court recommends finding that the records are not material, the Court therefore recommends that remand is not appropriate.

### D.    Conclusion

Because the Court recommends finding that substantial evidence supports the ALJ's decision to deny Plaintiff her benefits request–for the record did not contain objective medical evidence to support Plaintiff's allegations–and finding that remand is not appropriate, the Court recommends denying Plaintiff's motion for summary judgment, granting Plaintiff's motion for summary judgment, and dismissing this case.

## III.    Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later

than ten days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated:  August 6, 2012                    s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 6, 2012                     s/ Lisa C. Bartlett
                                          Case Manager

17